## TOLEDO & O. C. RY. CO. v. CHESAPEAKE & OHIO COAL & COKE CO.

(District Court, S. D. West Virginia. December 23, 1916.)

CARRIERS ⬅100(1)—CARRIAGE OF GOODS—CAR DEMURRAGE—CONSTRUCTION OF TARIFF RULES AND CHARGES—"SEASONAL TARIFF."

A railroad company issued and filed a local tariff, naming special car demurrage rules and charges on lake coal held by the company for transshipment at a lake port during the shipping season, which was fixed as from August 15th to December 31st. This tariff was to become effective July 12th, and provided that all cars on hand August 15th should be recorded as arriving on that date, and that all cars remaining on December 21st should be recorded as released on that date, and after 10 free days should be subject to local demurrage. *Held*, that such tariff was a "seasonal tariff," operative only during the shipping season, and applying only to shipments made after July 12th each year, and that a new tariff, issued and filed in a subsequent year and effective before July 12th, governed as to shipments for the following shipping season, although such shipments were made before it became effective.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–430, 432, 433; Dec. Dig. ⬅100(1).]

At Law. Action by the Toledo & Ohio Central Railway Company against the Chesapeake & Ohio Coal & Coke Company. Judgment for plaintiff.

Brown, Jackson & Knight, of Charleston, W. Va., for plaintiff.

Price, Smith, Spilman & Clay, of Charleston, W. Va., for defendant.

KELLER, District Judge. This is a suit brought for the collection of demurrage charges, alleged to be due by the defendant on coal consigned to defendant at Toledo, Ohio, for transshipment in the lake trade. From an agreed statement of facts it appears that whatever demurrage is chargeable to defendant accrued in the years 1910 and 1911 under plaintiff's tariff I. C. C. No. 1668, issued and filed with the Interstate Commerce Commission July 12, 1909, effective August 15, 1909; plaintiff's tariff I. C. C. No. 1856, issued and filed with the said Commission April 4, 1911, effective May 15, 1911, a copy of which was mailed to defendants' office on April 8, 1911, and received by it April 10, 1911; and plaintiff's tariff I. C. C. No. 1865, issued and filed with said Commission May 2, 1911, effective July 1, 1911. These were all local tariffs, naming car demurrage rules and charges applying on coal or coke transferred from cars to vessels and reshipped via lake, and No. 1668 was in force during 1910. This tariff treated the lake navigation season as extending from August 15th to December 31st, inclusive, and the demurrage rules were framed accordingly, and it was provided in rule 4 that:

"All cars of lake coal or coke held for transshipment on hand August 15th will be recorded under these rules as arriving on that date."

Under the same rule all cars remaining on hand December 21st were to be recorded as released on that date, and additional free time of 10 days allowed for reconsignment or disposition, after which time the car was to become subject to local demurrage. It will thus be

seen that this tariff provided for a transportation season, beginning on August 15th and ending on December 31st of each year, and there was not given the right in any sense to a shipper to use the cars and yards of plaintiff as storage facilities between seasons, though doubtless this tariff did give the right to start shipments for the lake trade on July 12th of each year.

From I. C. C. No. 1856, it appears that the season of lake navigation was extended, so as to begin on May 15th and end on December 31st of each year, and consequent changes were made providing that cars on hand May 15th should be recorded as arriving on that day. The general provisions as to free days, etc., were in all material respects similar to those contained in I. C. C. No. 1668, but the season was *advanced* three months, and lengthened by that time. I. C. C. No. 1865 appears to be a reissue of I. C. C. No. 1856, issued for the purpose of making a verbal correction of rule 5 by the insertion of the word "lake" before coal, so as to limit in terms the character of coal and coke to which the rule was applicable.

It appears from the agreed statement of facts that in 1911, on or before April 4, 1911, 427 cars of coal had been shipped from defendant's mines for transshipment as lake coal, and that between April 10, 1911 (the date on which defendant was notified of the issue of I. C. C. No. 1856), and May 15, 1911, the date when, by its terms, it took effect, 104 additional cars were shipped by defendant; that of the said 531 cars shipped as aforesaid, 493 arrived at Toledo on or before May 14, 1911; that of said 427 cars, shipped on or before April 14, 1911, 40 were released by dumping into a vessel on May 14, 1911, and were subject to no demurrage, 23 cars were similarly released on June 10, 1911, 218 cars were similarly released on June 13, 1911, 50 cars were similarly released on June 24, 1911, 91 cars were similarly released on June 28, 1911, and the remaining 5 cars were similarly released on July 13, 1911; that of the said 104 cars, shipped after April 10, and on or before May 14, 1911, as aforesaid, 15 were similarly released June 25, 1911, 59 were similarly released June 28, 1911, and the remaining 30 cars were similarly released July 13, 1911.

It is the contention of the defendant that no demurrage charges should have been assessed against said 531 cars, as they were all shipped from mines before the tariff I. C. C. No. 1856 took effect, and defendant contends said shipments were made during the pendency of I. C. C. No. 1668, and were entitled to be treated as arriving August 15, 1911, under the provisions of said last-mentioned tariff, although in fact all had been released, unloaded, and transshipped prior to that date. This is the main contention of defendant; a minor one being that, in cases where notice of arrival of cars at Toledo was not given by plaintiff on the day of such arrival, deduction from accrued demurrage should be made in accordance with the time such notice was actually given.

Taking up the last contention first, it is enough to say that it does not appear that there was any contractual obligation on the part of the plaintiff to give notice of the arrival of cars, although it did so as a matter of courtesy; nor does it appear that the alleged failure

in the comparatively few instances referred to played any part in the accrual of demurrage on such cars.   Hite v. Central R. R. of N. J., 171 Fed. 370, 96 C. C. A. 326.

As to the main contention of the defendant, that its shipments in 1911, prior to May 15, 1911, were governed in respect to demurrage charges at Toledo by the schedule or tariff regarding such charges in effect at the date of the shipment from the mines, and that such tariff constituted a contract between the parties as to all cars shipped from the mines while such tariff was in force, or, at the least, as to all cars shipped prior to April 10, 1911, the date when notice of the filing of the new tariff No. 1856 was received by defendant, I do not see how this position can possibly be sustained.

The demurrage tariff I. C. C. No. 1668, issued July 12, 1909, and effective August 15, 1909, was, by its own terms, a seasonal, and not a constant, tariff.   This is made manifest by the first two paragraphs preceding the rules and by paragraph (a) of rule 4.   The two paragraphs referred to as preceding the rules governing demurrage are as follows:

"The rules and charges named herein are effective each year from August 15th to December 31st, inclusive.

"In the application of these rules the season of navigation shall be considered as extending from August 15th to December 21st, inclusive."

Paragraph (a) of rule 4 provided as follows:

"(a) Lake coal or coke remaining on hand December 21st will be recorded as released on that date, detention being figured in accordance with provisions of rule 1 and first paragraph of rule 2.   An additional free time of ten days, including Sundays and legal holidays, will be allowed for each individual car for reconsignment or disposition, after which the car will be subject to local demurrage rules.   Agents must collect demurrage charges, or obtain a written guaranty of payment of same, before accepting orders for reconsignment or disposition."

This language abundantly sustains my interpretation of this tariff as a "seasonal" tariff, not in force except in relation to the season of lake transportation defined therein.   For example, during what portion of the year 1909 was it in force?   Clearly no reliance could be placed on it, in regard to demurrage charges at Toledo, as to cars shipped before the date of its issue (July 12th); and by its very terms cars on hand December 21st must be reconsigned or disposed of within 10 free days thereafter, or they became subject to the ordinary local demurrage charges.   This being the case with regard to the year 1909, I hold that the same construction applies to the year 1910, during which season this tariff was operative; that is, that the tariff should be treated as again issued as of July 12, 1910, and effective August 15, 1910, with each and all of the rights and liabilities that existed the season before, remembering the special character of the shipments therein provided for.   Under that tariff there was no authority for shipments governed thereby to be made before July 12th at the earliest, and most certainly none for shipments made in April and May and June, and arriving in May and June and July.

For the year 1911, the railway company, seasonably, on April 4, 1911, 2 months and 7 days, at the least, before the former lake coal

demurrage tariff would have become effective for that season, issued and filed with the Interstate Commerce Commission, a new tariff, I. C. C. No. 1856, superseding I. C. C. No. 1668, and providing for a much extended lake season beginning May 15, 1911, and extending to December 31. When this tariff was filed there was no lake coal demurrage tariff in effect, and the requisite 30 days for publication expired long before tariff I. C. C. No. 1668 would have gone into effect for the year 1911, and hence the only legal lake coal demurrage tariffs governing the shipments of defendant for 1911, intended for transshipments by lake, were I. C. C. No. 1856 and I. C. C. No. 1865, which latter evidently was issued for the purpose hereinbefore suggested.

In Horton v. Tonopah & Goldfield R. Co. (D. C.) 225 Fed. 406, it was held that a new demurrage tariff, increasing the demurrage rates, would become effective upon cars already subject to demurrage under the former demurrage tariff, upon the effective date of the increased rate. While I agree in the principle of that decision, I do not regard it as strictly applicable to this case by reason of what has already been said as to the "seasonal" character of these special tariffs.

It follows that in the judgment of the court, upon the facts admitted by the agreed statement, no defense is presented, and judgment may be entered for the entire amount of plaintiff's demand.

